Counsel for the appellant may proceed. Mr. Lambrose. Thank you very much, Your Honor. May it please the Court, my name is John Lambrose. I'm here on behalf of the appellant, Mr. Jesse Anderson. Today's discussion obviously must begin with whether or not several defaulted claims, the claims that were defaulted by the district court below, were indeed adequate and independent. In other words, whether the claims were refused to be heard by the Nevada Supreme Court on adequate and independent grounds. Adequacy, the first prong of the federal inquiry, begins with a determination as to whether or not the applicable state rule is clear and consistently applied, and applied without discretion, and certainly without unfettered discretion. What is your evidence that the rule was not applied consistently? By evidence, I assume you're talking about... Or you're showing. What are you relying on to establish? Is it simply the absence of proof, or are you able to pinpoint specific occasions in which the rule was not applied consistently? Assuming under Petruccelli and Valerio that the applicable trigger dates are the date in which the order dismissing the appeal was entered, which was February of 1994, through and including the order dismissing the post-conviction petition appeal, which was in May of 98, any cases, again, using Bennett v. Mueller in the line of cases that follow Bennett as kind of our matrix, any cases published or unpublished under the Powell v. Lambert case by the Nevada Supreme Court that would show inconsistent application would be fair game or fair evidence. The first case, the first published opinion, I think, that kind of sticks out like a sore thumb is State v. Tillema, 914 Pacific 2nd, 605. We cited in our reply brief at page 13, I believe. The Tillema case is a case in which the Nevada Supreme Court, sua sponte, reached out and grabbed a FERETA claim. Tillema is a case I'm familiar with because I represented Mr. Tillema here in the issue, reached out, grabbed a FERETA claim, and split three to two on whether or not the claim was enough to reverse and remand. The majority affirmed, and the two descending justices found the FERETA claim worthy of reversal. So that's, to me, a very compelling example. The other several examples that we cite in our opening brief and our reply brief and in our opposition to the motion to dismiss at excerpts of record pages 446 and 466, specifically I believe at page 449 in our excerpts of record, are both lines of capital and non-capital cases that come within that period of time. We did not cite, and again, part of the problem was the Bennett case was not the case that was litigated in the court below. But notwithstanding what the State would have the Court believe, this issue of consistent application and whether or not consistent application rose to the level of unfettered discretion was litigated in the Court below by both parties. The Attorney General's Office in their motion to dismiss or, excuse me, in their reply to our opposition to the motion to dismiss, and I cite the Court to the excerpts of record at page 485, talked about consistent. Their rebuttal, if you will, under Bennett argued that this raise-it-or-waive-it rule was indeed consistently applied, citing both capital and non-capital cases. So kind of a long-winded answer to your question, Judge O'Scanlan. To me, the most, the starkest example would be that Tillam case in 1996. How do you get around the Vang language? I'm sorry? How do you get around the language in Vang, the holding in Vang, actually? Well, and by that, I assume you're talking about the fact that the raise-it-or-wave-it bar at 34810 was consistently applied during Mr. Vang's target date or trigger date. That's correct. Mr. Vang's trigger date, as I recall, his trigger date was, well, his trigger date was, I believe, about the same time as the trigger date in the Valerio case, 1990 or 1991. And the Vang court said under the specifically narrow holding of this Court's en banc opinion in Valerio, and that was in 1990 and 1991, 34810 was inconsistently applied in capital cases only. And the Court cited to the Nevada Supreme Court's commendable policy of reaching out and grabbing issues that were not raised in appeal in death cases. But Vang did not, and I tried to make this point in the blue brief, Vang did not respond to the Nevada Supreme Court's decision in Pellegrini, which came down in 2001 in response to this Court's, and this is where it gets a little confusing, this Court's decision in Petrocelli, which was a 2001 decision. And in Petrocelli, in March of 2001, this Court said, under Nevada's raise-it-or-wave-it law, we're going to follow the line of authority from this Court in McKenna and ignore and not follow the Moran case. The Moran case was a timeliness case. So, really, I think that Vang misapplied Nevada, misinterpreted Nevada's State law, because if you read the Pellegrini case.    And there was a case that was misinterpreted in 1990 and 1991. I don't sense that that's contrary to Vang. There isn't a Ninth Circuit case that's contrary to Vang. But there also is not a Ninth Circuit case that has interpreted the consistent application of this particular bar in the period of time, at least not one that I know about, in the period of time between 1994 and 1998, my client's trigger dates. So, really, I think Vang, the holding in Vang is correct. But I think that the analysis in Vang cannot be applied to this particular scenario because of the difference, the time difference, and because of the Pellegrini case. And I need to kind of put one final point. The Pellegrini, what the Nevada Supreme Court said in Pellegrini in response to the Petrocelli case was we do not treat capital cases any different than noncapital cases. We don't exercise any more discretion or any less discretion in our noncapital cases. Well, the inference there would be then, to me, that if that is the case, then any Ninth Circuit case that found inconsistent application of the raise it or waive it rule would be fair stare decisis in a noncapital setting. And I forgot. I wanted to try to reserve about 30 seconds. But moving to what I think to be a very compelling reason for reversal, the cause and prejudice, the alternative argument with regard to adequacy and independence and, obviously, we've thoroughly briefed this. And I don't want to restate what we've said in the briefs. But there can be no more compelling argument for cause and prejudice than what was set forth in this case. First of all, the cause and the Murray v. Carrier cause and prejudice, in other words, the ineffective assistance of both trial and appellate counsel. Well, his trial counsel did pretty well. He won seven out of nine, didn't he? Yes. She was able to get acquittals on seven out of the nine counts. But I don't attribute that, Your Honor. That doesn't sound very ineffective assistance to me. Quite frankly, given the way that the victim testified and her inconsistencies in her testimony, which were echoed by the police officer, which were developed in the preliminary hearing and brought out by counsel, I don't dispute that. But I really don't think that, you know, the fact that Ms. Justice did any better job than any other lawyer could have done, given the nature of this case. And it's easy for us to second-guess at this point in time. But I think really where she dropped the ball was on direct appeal. She raised one issue. And to me, this is very much like Tillema, where the Nevada Supreme Court reached out and said, because Tillema was also a one-issue case. I think it was a sufficiency or something to do with the Habitual Criminal Act. The Nevada Supreme Court in Tillema reached out and grabbed the most compelling issue, which later on in Federal court proved to be the issue that got Mr. Tillema a new hearing or a new State trial. So I think that what happened here was the ineffective assistance of appellate counsel should serve as the cause under Murray v. Carrier to overcome the procedural bar for those eight claims that were defaulted by the State court. And additionally, the one point that Judge Hagan made below was there never was any fact-finding. There never was any kind of credibility determination with regard to the testimony that Mr. Anderson proffered in his sworn habeas petition and Ms. Justice's affidavit. There was a conflict there of fact. And the State court conducted no hearing whatsoever. And I just think that at the very least, what should happen in this case is a remand back down to ferret out that credibility determination. And I know my time is up and I have to go. Yes, your time is up, counsel. Thank you very much. Thank you. We'll hear from the government. Please. Court, counsel, my name is Robert Wieland. I'm the senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada. And I have the privilege of representing the respondents in this particular matter. I'd like to begin by noting what your Honor said with respect to whether or not there was evidence that the procedural bars that were applicable in this case were applied consistently. He cites the Telema case. Yes. I would like to begin with your characterization of that as evidence. And that dovetails into our points in our answering brief with respect to exactly what constitutes de novo review. A de novo review is a review from the same position as the district court. Obviously, the court is not conducting a de novo review if it is not in the same position as the federal court. And that would not be in the same position if this court were considering arguments that were not made to the federal district court, or considering evidence that was not offered in support of the inadequacy or the purported inadequacy of a state procedural bar, or if this court were considering items outside the record on appeal. The certificate of appealability in this particular case is defying the question as to whether or not the federal district court erred. That necessarily limits consideration to what is before the court, what was before the federal district court, and not what. As I understand your argument, and tell me if I'm wrong, it's this. Whatever Bennett v. Mueller does to the landscape of who has the burden, in this case, there was no evidence put forward with respect to inconsistent application. Is that your argument? That's the first prong of it, Your Honor. The second prong of it is, is that. And that can't be cured on appeal. If you, it's like, your position is that it's like any other burden of proof. If you don't meet it where you're required to in the trial court, you can't rebring it up here, if there is such a word. Yes. That would be our position. Okay. The other prong of that position is, is that that all was in the mix at that point in time. It wasn't any surprise with respect to there were issues about who had the burden. That was well known amongst habeas counsel practice. Well, Bennett does change that a bit, doesn't it? Well, it changes it. Well, first of all, with all due respect to this, the Ninth Circuit, Your Honor, I think Bennett errs from the standpoint that it does not, it says it does not presume the adequacy of any state procedural bar. And I think the United States Supreme Court. You're the second lawyer we've heard today that suggested that a three-judge panel like us was wrong. And, of course, there's only three of us up here. Well, I'm not saying that disrespectfully, Your Honor. I'm just. No, I don't. There's nothing we can do. Assuming for the sake of this argument in any event that we have to follow Bennett, then what do we do? I understand that. The thing about Bennett is, is that what it does is it requires the petitioner to bring forth some modicum of evidence showing the inadequacy of the state procedural bar. In this particular instance, there was none presented. Well, you can't do that. Just show the cases or there wouldn't be evidence put forth, would there? There is a debate as to the nature of the evidence. The Bennett case says, suggests citation to case authority that shows the inconsistent application of the particular procedural bar. Well, certainly if a lawyer in that situation had a case which went one way and another case that went another way, they would, that lawyer would have met the going forward requirements of Bennett, right? If he said to the trial court, to the district court, this case says A and this one says Z. Well, I don't think that's necessarily sufficient because. Why? The reason being is, is that you have to demonstrate the burden of showing inadequacy, Your Honor, is showing that the procedural bar is not followed in the vast majority of cases. And this Court has held in, I'm sorry, I forget, I believe it's the Wells case, Wells v. Mast, that a periodic or an occasional act of grace is not insufficient in and of itself to establish the inadequacy of a state procedural bar. So it's not enough to say one case went one way and another one went the other? I wouldn't, I wouldn't think that would be enough, Your Honor. And it certainly was, and whether or not that is enough in the grand scheme of things, that was not what happened in this particular case anyway. The issue was in fact brought up, as a matter of fact, the petitioner himself made a naked claim of inadequacy, but did not back it up. In fact, the only two cases that were cited, Bair v. Amos and the Stocks case, I believe, didn't have anything to do with NRS 34.810. And there certainly wasn't anything that was presented down below that would change the legal landscape of Vang.   And I'm not sure that that's a good example of an inconsistent application. Well, first of all, it's raised for the first time in a reply brief, and we understand that. But what about the merits of it? Well, Telema was decided long after, to the extent that it has any applicability in this particular case. It was decided after the state procedural bar was applied in this particular case. The other point that I would make is that with respect to 34.810, it's a, did you raise it before? Did you raise it before? If you didn't, you're procedurally barred. The state court, Nevada state law, requires the petitioner to demonstrate good cause and prejudice. The burden is upon him. Now, I know Mr. Lambrose, in his brief, says that he was not given the opportunity to make such a showing in state court. I respectfully disagree with that. If you would look at the record on appeal, page 204, in the form, there is a question, which of these claims that you're bringing in this petition have not been presented before? Mr. Anderson responded, none. And then he gave a reason why he hadn't presented any of them before. Mr. Anderson, although he's not entitled to effective assistance of counsel, was, in fact, represented by counsel. As I noted previously, the burden established by state law was on him to show cause and prejudice. He was, in fact, put on notice that the state was, in fact, asserting that procedural bar. I would direct the court's attention to the record on appeal at page 236. The claim that he never had any opportunity to rebut the assertion of the state procedural bar I submit to the court is simply incorrect. He didn't take the opportunity, or maybe he didn't, but he's not entitled to effective assistance of post-conviction counsel. And that's really what Mr. Lambrose is trying to argue and ask for this court to do, is say that Mr. Anderson was entitled to effective assistance of post-conviction counsel. Would you comment on the Vang case? You heard Mr. Lambrose's argument. What's your response? As I said, there is nothing in Vang that's changed the legal landscape. The fact that the Nevada Supreme Court disagrees with this court's assertions in McKenna and Petruccelli and obviously in Valerio is really of no moment. As a matter of fact, I would suggest that Mr. Lambrose is treading on some thin ice here. What he is really arguing is that the Nevada Supreme Court made a finding of fact that is binding on this court under 28 U.S.C. 2254E1. Now, if that's the case, then he has the burden of rebutting that factual finding by the Nevada Supreme Court by clear and convincing evidence. And if that's the case, then McKenna is wrong and Petruccelli is wrong and Valerio is wrong. All those cases are wrong. Now, we've been saying that as respondents with all due respect to this court for some time. But they can't have it both ways. Well, one of our presidents must be worth something. Well, with all due respect to the court, we believe that there was an incorrect analysis in those cases. But I understand that they are, in fact, binding on this court. Unless this court has any other questions, that's all I have to say. Thank you for your time. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Siler, Hawkins